Good morning, Your Honors. Craig Webster on behalf of Bruce Warren Sampson, the defendant. I'd ask to reserve, and may it please the Court, I'd ask to reserve two minutes for rebuttal. Your Honors, in the early morning hours of October 27, 2019, Mr. Sampson and E.U. engaged in a physical fight in a hotel room on the Yakima Indian Reservation. Both Mr. Sampson and E.U. were Yakima Nation enrolled members and, as I stated, occurred on the Indian Reservation. So, therefore, Your Honor, we had two Indians involved in the fight. Two counts were alleged, and Mr. Sampson was indicted on one count of assault resulting in serious bodily injury and one count of assault with a dangerous weapon. Mr. Sampson fought the indictment, took it to jury trial on a theory of self-defense, and ultimately was convicted of both counts of jury trial. Here before Your Honors, Mr. Sampson challenges that conviction to assault with a dangerous weapon. Under the statute, there are two types of weapons that can be considered a dangerous weapon. One type is a per se dangerous weapon, such as a knife. That's not relevant to Mr. Sampson's case. The other type is a common object, such as a shoe, which is ultimately what Mr. Sampson was charged with U.S.B. Rocha, U.S.B. Swallow. In order for a shoe or a shod foot to be considered a dangerous weapon, Mr. Sampson had to use that shoe to augment the physical force of the assault with the intent to commit serious bodily injury. In the case of Bart, Your Honor, there simply was not that evidence. No evidence to intensify the physical force of his assault. Our argument is fairly factually intensive, so it helps to give some background. In the incident, there were three adult eyewitnesses to the actual fight. All three testified at trial. Mr. Sampson testified on behalf of the defense. Charlene Richards was also present. She's Mr. Sampson's significant other. She testified at trial as well on behalf of the defense. The only other person there was E.U., the victim of the crime or the alleged victim. He testified as well. No eyewitness to the fight testified that Mr. Sampson ever kicked E.U. with a shod foot. That Mr. Richards testified that the two men engaged in a fight. E.U. knocked down Mr. Sampson. Mr. Sampson returned. They engaged in a punching match. At one point, E.U. pulled out a knife, attempted to attack Mr. Sampson. Mr. Sampson defended himself. Ultimately, he His argument was not a self-defense because he denied that he did. Did he ever argue self-defense? Yes, Your Honor, he did. Okay, okay. So, Your Honor, he argued, he did deny the fight. I think I was getting confused. Initially, he disclaimed that he was involved in this at all, right? And then, but later on at trial, he argued, he argued self-defense? That is correct, Your Honor. When Mr. Sampson was at the FBI, interviewed him, recorded him without his knowledge, and in that interview, Mr. Sampson did deny any involvement in the fight. But at trial, go ahead. Sorry, Your Honor. At trial, I'm sorry. I was going to ask you though, but this was all heard by a jury, right? Yes, Your Honor. So, so jury sat, listened to all the evidence, listened to the jury instructions, weighed the evidence, and then came back with a is EU's testimony. In this, this entails also our motion for a pretrial deposition and arguably that Mr. Sampson's right to confrontation was violated. At trial, so a week before trial, EU significantly changed his story in an interview with the government. Was that pointed out to the They did make a decision, but at trial, at trial, EU, he basically created an evidentiary black hole. So, he, he testified that he was hit one time by Ms. Richards with a beer can in, in the head, and the other time by Mr. Sampson in the head, and then he was knocked out. So that And the, basically, the government and the jury was required to rely on a series of inconsistent statements made early on pretrial by EU. So, at And, and very little evidence accidentally, or actually came out. Pardon me, I need a sip of water. There, there was, there's virtually no evidence that came out at trial that indicated that Mr. Sampson, in fact, kicked EU. There was some circumstantial evidence, wasn't there? There was, There, there's very little, Your Honor. Well, there was the injuries. There were, Your Honor, but Dr. Newton, the government's own expert, testified at trial that those injuries were consistent with a fist, they were consistent with a foot, and Belief said they were consistent. And as, you know, as the jury, it was the jury's role to determine what the facts were, and they can rely on circumstantial evidence. Your Honor, understood, but, but it still has to be a, the evidence has to be reasonable, the credibility of the evidence. There has to be a reasonableness to it. But there also, there has to be Well, he had a couple of broken ribs, right? He, yes, Your Honor. He, Just out of curiosity, was there a Rule 29 motion made in the case? There was, Your Honor, yes. It was denied? It was, Your Honor. Your Honor, in, what's troubling about this case is just that there really was a minimal amount of evidence that suggested he, he actually, in fact, kicked EU, that Mr. Sampson kicked him. But you need to take it a step farther under the case law, and there has to be And that, that evidence just was not there. There was, there was not sufficient evidence for a rational juror to make that, to make that finding. Okay. You want to, why don't you move on to the other issues? Thank you, Judge. Your time is running out. Your Honor, it ties into, it ties into the sufficiency of the evidence argument, but pretrial, we, we made a motion for a pretrial interview of the material witness, EU. That motion was denied. And ultimately, because that motion was denied, and because of EU's basically false memory, which at trial, Dr. Newton testified that a person in EU's situation would not lose their memory, and basically showed that his, his presentation of being hit twice, being knocked out, and then remembering afterwards, but not two years later, it, it was against science. It basically, it medically was inaccurate. It showed those, it was basically a false presentation. So, because And the jury heard that? Yes, Your Honor. Yes. I, I'm, I'm paraphrasing. So, the bottom line here, though, is that the defense has no right to interview a government witness prior, prior to trial. I, Your Honor, I, I understand that's the, the current state of the law. I, I acknowledge that. But I think, I think that's quite frankly wrong. And I think it leads to You think we can do anything about that? Or, I mean, other than, I, only Almancourt could do something about that, right? Or I could. Hey, we do have Judge Benitez with us. Your, Your Honor, I, well, I think this, this situation does allow you to do something. Because I think under the circumstances, because of EU's testimony, at trial, Mr. Sampson's right to confront his accuser was violated. That Sixth Amendment right was violated. The, the purpose of, of the confrontation clause is, is one to It's a hard argument to make because he did get to. You just, you're, you're just unhappy with the state of his, of him when he actually got to, you know, got to, to confront him months later, or years later, or whatever it was. Your Honor, I, I, I understand, I understand what Your, Your Honor's point. That'd be pretty far reaching. You know, if we were kind of, because, because it wouldn't just be that you have a right to confront, but that you, you have a right if you think that the person will be different. And what, what would be the line we, that, that a court would draw on that? Well, Your Honor, I, I can tell you, I, I don't see why a defense should not have access to a material witness pretrial. To me, that would certainly be best practice. If that was tried in state court, certainly that right would be expected. And actually, to be effective as counsel, you would, you would require an overturning precedent, right, for that position. I thought you were going to, and you're saying, yeah, but this is like a special case, but I'm trying to figure out what the line would be. Yes, if this were a 1326 case, and the material witnesses were going to be made unavailable, then they would have that right. But that's not the issue here, right? It's not a question about whether or not the witness would be unavailable. That, that, well, in some ways, he made himself unavailable. I mean, arguably, he made himself unavailable when he testified at trial. But that, that's even worse for you, I think, if, like, if you say, if you're, it seems like you're saying that, well, the reason he's unavailable is because he was not being honest later, and that's what, but that could always be the case. So that would mean that, I mean, then you really are asking for a categorical rule change. If your your doctor said, said the opposite of that, said that that doesn't happen. So I, I mean, if the possibility that people might, may lie on the stand when they get, you know, when you get them on there is always going to be present, and, and, and you can do with what, what you did, I think, which is say, this person's obviously lying. We've got a doctor saying that he has to be lying. Your Honor, I, I agree, I agree with what you're saying, but I, I do think this was different. I think the combination of the two in this case, I think there was a confrontation violation because the way in which EU testified at trial, it, it, he effectively removed himself from cross-examination on the substance of the evidence. There was, there was no way. No, no, I, you said that earlier. I, I do think, I think you wanted to reserve some time, so we can have your, I do think we're probably going to ask the government about the obstruction of justice enhancements, so maybe be ready to, to talk to us about that on. Thank you. Good morning, Your Honors. My name is Richard Burson, Assistant United States Attorney out of the Eastern District of Washington, our Yakima branch office. May it please the courts, taking the court's cue, I'm going to turn first to the obstruction of justice enhancement. The district court applied the obstruction of justice enhancement after finding that the jury must have found that the defendant was not truthful on the stand, and I am paraphrasing a bit here, for his testimony, and therefore. Just a second. Yes. You're, you're, you're familiar with the Herrera case? Not off the top of my head, Your Honor. All right, let me, so the Herrera case, the, the defendant does not have a right to either attempt to mislead the court, or to commit perjury, or to obstruct the proceedings. And I recall his testimony, and I remember when he was testifying, thinking to myself that it was, that it was, to put it kindly, tenuous at best. And in that case, the Ninth Circuit had a very explicit, Judge Graber, as I recall, dissented in that case. And I've read her dissent, and of course, since I was the district judge in that case, in case you didn't gather that by now. I, I read, and I can understand how, how the Ninth Circuit said that in my statement, I was not clear enough. But in this case, in this case, the judge made the following statement. The judge said, the jury necessarily found that the defendant perjured himself. He used the word perjured. Now, in the Dunnegan case, the Supreme Court defined perjury. Said, in determining what constitutes perjury, we rely upon the definition that has gained general acceptance and common understanding under federal criminal perjury statute. A witness testifying under oath or affirmation violates the statute if she gives false testimony. Concerning a material matter with a willful intent to provide false testimony. If a judge uses the term perjury, isn't that basically a shorthand for saying, these are the three things that I find. Do you agree or disagree with that? I agree with that statement, Your Honor. Oh, good. All right. But that's not what we said in our case law. That's not what, that's not what the Ninth Circuit said in the Herrera case. We're not rebound by our case law. Yeah, so. Yes, Your Honor. Except for in the Herrera case, the judge did not use the term perjury. But in this case, the judge did use perjury, correct? That is correct. Yeah. So, they're distinguishable. It is, and. So, where's the materially false statement here? Defendant testified at the very least by negative implication that he did not kick the defendant. He testified that he punched the defendant only in the torso and head. He testified that when the defendant fell, sorry, the victim fell, I believe it was several times, that he paused in the fighting and allowed the victim to get up before resuming the fist fight. Fist fight only, according to the defendant during testimony. However, what the jury found that the government had proved, beyond a reasonable doubt, was that the defendant had assaulted the victim with a shod foot. Not just a shoe, but a foot, or put differently, kicked him. That jury finding is irreconcilable with the defendant's statement, 100%, that he did not, or I should say, his testimony that he did not kick the victim. So, that will often be the case because, you know, usually somebody's going to present evidence or say they didn't, you know, especially if they testify, they're going to say they didn't do it. The jury finds they did it, and you could almost always say, well, you perjured yourself, or you. So, in some ways, it seems like the Herrera case, Herrera-Rivera case, and these other cases from the Ninth Circuit are basically just saying, like, the obstruction of justice enhancement will kind of almost always be an automatic enhancement unless we don't do something to make the court do something extra. And that something extra is that it has to explicitly, sort of, if it wants to do that, it just has to go through the work of explicitly making findings. And I don't know if I agree with that, but it seems to me what Herrera-Rivera says, so I don't know that just pointing to, are you not familiar with the Herrera-Rivera case? Not intimately, Your Honor, no. Okay. Well, I mean, the problem is that's sort of, that's the case that I think we're all concerned maybe binds us, so it's hard to have a discussion with you if you don't have it in front of you. Okay. Oftentimes, logically, you will be able to conclude this person must have perjured themselves, but it's not clear to me that that's sufficient, that the logical conclusion that they must have perjured themselves, which is what I think you're arguing here. My argument is, Your Honor, it's the only conclusion. If a jury believed the defendant that he did not kick – Like if it's the only, but I'm just not sure that's enough under Herrera. I think you still may have to make the factual findings, and I think what Judge Menendez is asking is, can we take from the legal conclusion that they, where the judge says they committed perjury, that the judge is sort of using that as a shorthand for the three factual findings that would go into a perjury finding, right? I don't know. I think that's correct, Your Honor, but if the standard is where the court makes that shorthand, and therefore in 100% of those cases where a defendant, according to the district court, has perjured himself, and that finding by the district court is reasonable beyond a preponderance of the evidence, which was the standard here, then I think that's a reasonable presumption to apply. I think that's a reasonable application of the obstruction enhancement. I'm not sure if I disagree with you that that would be reasonable, but I'm not sure that that's reconcilable with Herrera-Rivera. I guess the difference here, Your Honor, would be that this isn't just a defendant making a statement that's mildly irreconcilable with testimony, contra testimony. The difference here is that it is directly irreconcilable, and so under any standard – Well, I won't speak for the district court judge in Herrera-Rivera, but I get the vibe that maybe that judge felt the same way in that case, too, that it was directly irreconcilable, logically irreconcilable, like flatly irreconcilable, and our court said that wasn't good enough. Well, I think what the language used in Herrera by the district court, Your Honor, was that it was, I believe, tenuous. I believe I'm using irreverberage, so that is a difference. I think it was using the classic understatement approach of saying something. I believe that's what the district court judge said. That falls under the no good deed goes unpunished rubric. An understatement or not, Your Honor. It was vague, but it was vague and not clearly stated, whereas in this case, the judge clearly says that the jury necessarily found – and I think that's an interesting word to throw into that – necessarily found that the defendant perjured himself. So you would agree with me that, in fact, that's a shorthand way, as stated in the Dunnigan case by the Supreme Court, of saying that all the elements are met, right? For perjury, yes, I would agree with that statement, Your Honor. And perjury is, in fact, obstruction of justice, right, under the guidelines. Yes, and I want to be clear. I can't get into the district court's mind when they used the term perjury, but assuming that the district court used legal words with the weight that they are intended, then yes. Do you think the jury just could have relied on the circumstantial evidence presented by the government's expert? Are we turning to the – sorry, the verdict in this case, Your Honor? No, I mean, you know, so what you're saying is that the way you're interpreting the judge's statement is that he obviously perjured himself with respect to use of the foot, right? Well, there was other evidence with respect to how he sustained those injuries. There was the circumstantial evidence. That's correct, Your Honor. That the jury just could have relied on. They didn't necessarily have to believe that he was lying. They didn't have to believe he was lying. No. But it's – But you're saying it's so obvious that he lied. Well, he may have lied, but we don't know what the jury relied on. And I think all that this is intended to do, I don't think, you know, I don't want to judge Benitez as a current district judge, and I understand they have a heavy calendar and everything, but when we get to sentencing, it's a different kind of thing. I mean, you know, a district judge can say, hey, look, you know, he lied, and here's how he lied. It was material to the jury's verdict, and I'm going to apply the obstruction of justice enhancement. Let me ask you this. So it says in Herrera-Rivera, believe me, I'm reading from it, the district court must make express findings on each element of perjury. That's what our court said. And here the district court said the jury necessarily found that the defendant perjured himself. So do you think stating the conclusion counts as making an express finding on each element? I think there is, I think the analysis was shorthand and possibly not perfect. Having said that, there are certainly facts in the record that would support the conclusion, whether or not the analysis was spelled out with sufficient or what we would desire in terms of detail. The fact that it would support the conclusion does not count as an express finding on each element, right? I mean, I think in other circumstances we wouldn't say, you know, like we have standards of review that force us to look at the record and see if we can find the evidence supporting it, right? But that doesn't sound like what Herrera-Rivera says. The district court must make an express finding. Another thing it said, must make an express finding of perjury, right? And I think you'd be on really solid ground, but make an express finding on each element of perjury before applying an obstruction of justice enhancement. I think by implication the court did make a finding. Whether that's expressed enough or not is certainly an open question. However, I think considering all the facts in the record, just stepping out of the perjury realm for just a moment, taking the defendant's testimony as a whole, there were several statements made that were frankly incredible. Multiple statements that were, to use the district court and Herrera's verbiage, tenuous to the truth. But getting to Judge Van Dyke's question though, even though perhaps you and I might agree that the testimony would support a finding for obstruction of justice, under Herrera-Rivera the judge has to make a finding on each of the elements. So it doesn't matter what the evidence, I mean, what you tell us the evidence shows. The question is, did the judge make a finding on the elements? My question to you is geared as to whether or not perjury, in essence, by saying that the defendant perjured himself, did the judge not find that all of the elements set forth in the Dunnegan opinion were met? You see what I'm saying? So you can tell us all about the evidence, but it doesn't tell us what the finding was, unless you agree with me that by saying that the judge found that there was perjury, and perjury includes a finding of all the elements. You follow what I'm saying? I do, Your Honor. And assuming that district court judges, federal jurists, use words with legal implications, knowing what the implication of those words are, and knowing what elements underlie them, then yes, we would assume that the district court judge did make a finding with respect to each element by implication. But what was the finding that he was making? It's not clear, Your Honor, from the judge's order. Then there should be an express finding. What I mean by that, it's not clear whether he was referring to the fact that the defendant perjured himself by claiming self-defense or whether he perjured himself by saying he never kicked the victim. Either one of those is true. The self-defense probably more in that tenuous nature. You're talking about the factual basis, the factual predicate. That's correct, Your Honor. But I do have to concede the district court judge did not elaborate anymore on exactly which statements were perjury. Just out of curiosity, so if we were to find that the judge erred by not making the requisite findings, what happens next? Gets remanded back to the trial court? I believe that's correct, Your Honor, be remanded back to the trial court for resensing without the obstruction enhancement. No, he would be able to. He could make the findings. He could do it. So he would say, so now the trial court judge would say, I find that he materially lied because the evidence supported that he kicked a defendant with a shod foot. That's correct. We would because that evidence, I think, is so uncontroverted, that that statement is so irreconcilable with the jury verdict. I don't know how a district court could make any other decision, frankly, without it being an abuse of discretion or clear error if we're looking at the facts. And so as a technical piece of this analysis, yes, I think remand. But if this court were to take it a step further, I think it could avoid remand by saying the conclusion will essentially be the same, that the judge could not have come out the other way. That's what happened in Arias-Villanueva, right? The court looked at the whole record and said, having looked at the record. I think that's right, Your Honor. I'm a little cautious in affirming that off the cuff, but yes. Well, thank you, counsel, for your argument. Do you have any other further questions? Thank you, counsel. We'll hear from Mr. Weber. Thank you, Your Honors. Thank you, Your Honor. Your Honor, to address the obstruction issue, Your Honor, my recollection is that the district court did not make those elemental findings. I don't think any of us are saying that. The district court did say that the jury had necessarily found he perjured himself. That's what they said. And I assume your position would be that by doing that, he necessarily found all the findings that are clear in that? Your Honor, I think he needed to do – I don't think the court actually did the analysis that's required under the case law that Your Honor just cited. Going back from my recollection of that, I don't think he did. I don't think that much – I don't think a whole lot of time was spent on that individual enhancement and argument. And so I don't think those findings were made. And I think it would need to go back. I think it would need to be remanded, Your Honor. You know, I ask the questions because neither Jimenez or Jimenez Ortega, which were cases, or Castro, which preceded Herrera, in none of those cases did the district judge use the word perjury. But in this case, the judge said necessarily perjured himself, right? Your Honor, I'm not certain what to make of that. I think, honestly, I think part of the language the judge was using was probably based out of what was in the PSR. You know, I'm trying to get into Judge Mendoza's mind, and I'm not certain. But I think he needs to make – go beyond just the simple conclusion that there was perjury. I think he is required to make those individual findings, Your Honor, and should do so. Okay. It sounds like someone agrees with you on that. Your Honors, if I could just briefly, I'm running out of time, but I do think it's important to address the unreasonable sentence and disparate impact. Mr. Sampson, the fact that he was a Yakama Indian in Indian country, subjects him to federal court jurisdiction under the Major Crimes Act. And, Your Honor, his sentence is— I think we have this argument from your brief. Yeah, this is all of it. We're familiar with the argument, so I understand why you'd want to make it. But I think we'll go ahead and leave it at that, unless my colleagues have questions about any of that. Well, thank you, Counsel. Thank you to both sides for your argument this morning. We have one more case this morning.
judges: PAEZ, VANDYKE, Benitez